IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Frank Tolen, Jr., #246966, | ) | C/A No.: 1:15-2503-RBH-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Leroy Cartledge, Warden, Perry | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Frank Tolen, Jr. ("Petitioner"), is an inmate at the Perry Correctional Institution of the South Carolina Department of Corrections who filed this initially-counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 15, 16]. Petitioner requested and was granted three extensions, giving Petitioner until February 19, 2016, to file a response. [ECF Nos. 20, 22, 24]. On February 19, 2016, Petitioner requested and was granted a stay for his response [ECF Nos. 26, 27], pending resolution of his counsel's request to withdraw filed ex parte [ECF No. 25]. On April 22, 2016, the court issued an order relieving Petitioner's counsel and directing Petitioner to file a response to Respondent's motion for summary judgment by May 13, 2016. [ECF No. 33]. Petitioner failed to respond. The court issued an order on May 17, 2016, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's motion by May 31, 2016. [ECF No. 36]. The court also

advised Petitioner, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [ECF No. 37]. Petitioner filed a response on May 31, 2016 [ECF Nos. 39], and Respondent filed a reply on June 10, 2016 [ECF No. 40].[1] The matter having been fully briefed, it is ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.      Factual and Procedural Background

At trial, the state presented evidence that Petitioner and his codefendant Wade Brannon ("Brannon") robbed truck driver Oaton Dyson ("Dyson") on October 1, 1996. [ECF No. 15-13 at 82–88]. Dyson had been napping in his 18-wheeler in Saluda County when someone tapped on the truck door. *Id.* at 82–85. Petitioner pointed his gun at Dyson, who opened the door, as Petitioner directed. *Id.* at 83, 85. Petitioner and Brannon entered the truck and took Dyson's money. *Id.* at 85–86. Petitioner then directed Dyson to drive, but he instead bailed out of the truck when Petitioner fumbled with his gun. *Id.* at 86. Petitioner and Brannon chased Dyson to a nearby house, where Dyson had climbed atop a shed roof. *Id.* at 86–88. Dyson screamed, and Petitioner and Brannon ran away once lights turned on in the neighborhood. *Id.*

---

[1] In his response in opposition to Respondent's summary judgment motion, Petitioner makes arguments for an expansion of the record and requests an evidentiary hearing. [ECF No. 39 at 12–19, 24–27]. To the extent Petitioner's arguments can be construed as a motion, *id.* at 19, 27, the undersigned recommends it be denied, as an evidentiary hearing is not warranted in this case and the record before the court adequately addresses the issues involved.

Petitioner was indicted by the Saluda County Grand Jury during the January 1998 term of court for armed robbery (1998-GS-41-165) and possession of a pistol by a person convicted of a crime of violence (1998-GS-41-166). [ECF No. 15-11 at 165–66, 68–69]. Vannie Williams, Jr., Esq., represented Petitioner at a jury trial on January 26–27, 1998, before the Honorable James W. Johnson, Jr., Circuit Court Judge. [ECF No. 15-10 at 10 *et seq.*]. The jury found Petitioner guilty as charged [ECF No. 15-11 at 110–12], and Judge Johnson sentenced Petitioner to life without parole ("LWOP") for the armed robbery and five years for the gun charge, to run concurrent. *Id.* at 120.

On April 15, 1998, Petitioner filed an application for post-conviction relief ("PCR"), raising claims of ineffective assistance of counsel, failure to file a direct appeal, and failure to hold a preliminary hearing. [ECF No. 15-11 at 122–31]. On November 15, 2000, a PCR evidentiary hearing was held before the Honorable Rodney A. Peeples, Circuit Court Judge, at which Petitioner and his counsel, S. Murry Kinard, Esq., appeared. *Id.* at 136–46. On November 17, 2000, Judge Peeples filed an order granting Petitioner's request for a belated appeal and dismissing Petitioner's remaining PCR grounds without prejudice. *Id.* at 147. On November 28, 2000, Petitioner filed a notice of intent to appeal his conviction and sentence. *Id.* at 148–49. On December 12, 2000, Petitioner filed a pro se motion for reconsideration. *Id.* at 150. On July 16, 2001, the South Carolina Supreme Court dismissed Petitioner's appeal without prejudice due to

3

Petitioner's pending motion for reconsideration. *Id.* at 161.  On October 2, 2001, Judge Peeples dismissed Petitioner's motion to reconsider. *Id.* at 162–63.[2]

Petitioner refiled his notice of appeal. On March 22, 2002, the South Carolina Supreme Court denied Petitioner's petition for writ of certiorari, dismissed his direct appeal, and granted counsel's request to be relieved. *Id.* at 179–80. The remittitur was issued on April 9, 2002.[3]

On May 17, 2002, Petitioner filed a second PCR application, raising claims of ineffective assistance of counsel and illegal sentence. [ECF No. 15-11 at 181–95]. On April 17, 2003, a PCR evidentiary hearing was held before the Honorable Kenneth G. Goode, Circuit Court Judge, at which Petitioner and his counsel, Wayne Floyd, Esq., appeared. [ECF Nos. 15-11 at 202–24; 15-12 at 1–16].  On June 24, 2003, Judge Goode filed an order granting Petitioner's PCR application, reversing his conviction and sentences, and remanding Petitioner's case for a new trial. [ECF No. 15-12 at 17–25]. The state appealed the grant of Petitioner's PCR application.  On December 19, 2005, the South Carolina Supreme Court issued an order dismissing certiorari as improvidently granted with respect to the PCR court's ruling on the issue of the state's failure to give proper notice of intent to seek a sentence of life imprisonment without parole. *Id.* at 26.

---

[2] Petitioner also filed a writ of mandamus asking the circuit court to rule on his pending motion to reconsider, which Judge Peeples dismissed as moot on October 4, 2001. [ECF No. 15-11 at 164].

[3]  Respondent's return recites that the remittitur was issued on April 9, 2002 [ECF No. 15 at 3], however the undersigned has been unable to locate a copy of the remittitur in the record.

The order also vacated the remainder of the PCR's court's holdings and remanded the matter for a new trial. *Id.* at 27.

Andrew Thompson, Esq., represented Petitioner at his retrial on November 7–9, 2006, before the Honorable William P. Keesley, Circuit Court Judge. [ECF No. 15-12 at 28 *et seq.*]. The jury found Petitioner guilty as charged [ECF No. 15-14 at 17–18], and Judge Keesley sentenced Petitioner to LWOP for the armed robbery and five years for the gun charge, noting Petitioner had already served five years. *Id.* at 20 (transcript), 34–35 (sentencing sheets).

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Kathrine H. Hudgins, Esq., of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a final brief on or about May 15, 2008. [ECF No. 15-1]. Attorney Hudgins raised the following issues:

1.   Did Tolen's second trial after prevailing in post conviction relief violate the constitutional prohibition against double jeopardy when the relief granted and later affirmed by the South Carolina Supreme Court affected only sentencing and not the actual conviction?

2.   Did the court lack subject matter jurisdiction to try Tolen a second time on the same indictment and the same charges when the error found by the PCR court and the South Carolina Supreme Court warranting remand went solely to sentencing and had no effect on the conviction?

*Id.* at 4.

On May 26, 2009, the Court of Appeals filed an unpublished decision dismissing the appeal. [ECF No. 15-3]. The remittitur was issued on June 12, 2009. [ECF No. 15-4].

Petitioner filed a PCR application on June 30, 2009, amended on January 25, 2013, in which he alleged that his sentence was illegal and that his trial and appellate counsel were ineffective. [ECF No. 15-14 at 38–46, 54–48]. A PCR evidentiary hearing was held before the Honorable R. Lawton McIntosh, Circuit Court Judge, on January 30, 2013, at which Petitioner and his PCR counsel, Stephen D. Geoly, Esq., appeared. *Id.* at 66–184. On April 1, 2013, Judge McIntosh filed an order of dismissal. *Id.* at 185–203.

On April 12, 2013, Petitioner filed a motion to alter or amend judgment, requesting the PCR court reconsider its decision to deny relief. *Id.* at 204–207. On April 23, 2013, Judge McIntosh issued an order denying the motion to alter or amend. *Id.* at 210–11.

Petitioner appealed from the denial of PCR and was represented by Attorney. Geoly and E. Charles Grose, Jr. [ECF No. 15-5]. Attorneys Geoly and Grose filed a petition for writ of certiorari in the South Carolina Supreme Court on or about April 16, 2014, raising the following issues:

I.  Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to question the validity of the eyewitness identification of petitioner by the victim?

II.  Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to impeach the cooperating co-defendant about the potential sentences he faced for armed robbery if he had not cooperated with law enforcement and proceeded to trial?

III.  Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South

Carolina law when trial counsel failed to make a *Batson* motion[4] because he did not understand the law?

IV.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because of complete breakdown of the attorney-client relationship when trial counsel refused to meet with Petitioner at the detention, failed to review with Petitioner the transcript of the prior trial, and failed to investigate the evidence the State intended to use at trial and the cumulative error denied petitioner a fair trial?

V.     Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law when appellate counsel failed to raise and brief the trial court's erroneous admission, over objection, of information that the investigating officer received from deceased witness Frontis Smith, when that information was inadmissible hearsay, violated the Confrontation Clause, and constituted prejudicial comments on Petitioner's character?

VI.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to object to his being [retried] after this Court remanded his case for resentencing only?

*Id.* at 8.

The South Carolina Supreme Court denied the petition on December 10, 2014.

[ECF No. 15-8]. The remittitur was issued on December 30, 2014. [ECF No. 15-9].

Petitioner filed this federal petition for a writ of habeas corpus on June 22, 2015.

[ECF No. 1].

---

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986) (finding the use of a peremptory challenge for a racially-discriminatory purpose offends the Equal Protection Clause).

II.      Discussion

      A.      Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following

claims:

**Ground One:**      Defense counsel was ineffective, in violation of the Petitioner's Sixth and Fourteenth Amendment rights, for failing to sufficiently (1) prepare for trial; (2) investigate; and (3) meet with the Petitioner.

                           <u>Supporting Facts</u>: The Petitioner was originally convicted in 1998, but his convictions were overturned on collateral review. Defense counsel did not represent the Petitioner at his first trial. Prior to the second trial, defense counsel met with the Petitioner on only one occasion for approximately twenty to twenty-five minutes, and did not have the discovery or the transcript from the first trial at the time of that meeting. Defense counsel had no prior criminal trial experience. His failure to meet with the Petitioner caused him to be unprepared for trial, as he could do no investigation or consult with the Petitioner about possible defenses without meeting with him.

**Ground Two:**      Defense counsel was ineffective, in violation of the Petitioner's Sixth and Fourteenth Amendment rights, for failing to sufficiently challenge the victim's identification of the Petitioner.

                           <u>Supporting Facts</u>: At the Petitioner's first trial, the victim identified the Petitioner as one of the perpetrators based upon his viewing the Petitioner in the courtroom. The victim was shown a photo line-up, but did not select any photographs out of the line-up. At the Petitioner's second trial, the victim denied identifying another individual as the perpetrator, despite the fact that he was cross-examined about a photograph which had the words "victim was able to pick this suspect out of a lineup" written on it. Although defense counsel moved to suppress the victim's identification, he did not argue that the show-up procedure used was improper, nor did he argue that the victim had identified another individual as the perpetrator.

**Ground Three:**      Defense counsel was ineffective, in violation of the Petitioner's Sixth and Fourteenth Amendment rights, in failing to cross-examine the Petitioner's co-defendant regarding his potential sentences.

> Supporting Facts: The Petitioner's co-defendant, Wade Brannon, was charged with armed robbery. In exchange for his testimony at the Petitioner's first trial, Brannon was permitted to plead guilty to the lesser-included offense of common law robbery. At the Petitioner's second trial, Brannon testified against the Petitioner again. Defense counsel did not cross-examine Brannon regarding both the minimum and maximum sentences for armed robbery that he avoided by testifying against the Petitioner. The Confrontation Clause permitted such examination.

**Ground Four:** Defense counsel was ineffective, in violation of the Petitioner's Sixth and Fourteenth Amendment rights, for failing to make a *Batson* motion following jury selection.

> Supporting Facts: At the Petitioner's trial, the State used four of its five peremptory strikes to strike black jurors, and used one peremptory strike to strike a black juror as an alternate. Defense counsel did not make a *Batson* motion in response to the State's selective strikes of black jurors. At the Petitioner's PCR hearing, defense counsel testified that he believed that he could not make a *Batson* motion unless there were no black jurors on the Petitioner's jury. This belief was incorrect as a matter of law.

[ECF No. 1 at 5–10].

        B.      Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-

moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

> (B)     (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266

(S.C. 2007).[5] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)(internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d

---

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

### b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is

barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

> 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state's courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir.), cert. denied, 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the

16

"question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

      D.    Merits Analysis

          1.    Ground One

Petitioner argues his trial counsel was ineffective for failing to sufficiently (1) prepare for trial; (2) investigate; and (3) meet with Petitioner. [ECF No. 1 at 5]. Petitioner alleges counsel met with him once for approximately 20 to 25 minutes and did not have the discovery or the first trial transcript. *Id.* Petitioner claims counsel did not have prior criminal trial experience and argues his failure to meet with Petitioner caused counsel to be unprepared for trial, as he could not investigate or consult with Petitioner about possible defenses without having met with him. *Id.*

Petitioner testified at his PCR hearing that his trial counsel did not adequately prepare for his trial in that he a) did not investigate a photograph that Petitioner believed would have acquitted him, b) did not respond to Petitioner's letters, which repeatedly asked counsel for information and to visit him, and c) only met with Petitioner once, and during that meeting, did not review the transcript from his first trial. [ECF No. 15-14 at

154, 157–59, 168–69].

Counsel testified Petitioner's case was his first criminal trial. *Id.* at 96. Counsel stated he reviewed the transcript from the first trial several times and he reviewed portions of the transcript with Petitioner, but did not go over the entire transcript with him. *Id.* at 100, 111. Counsel testified he met with Petitioner once and they corresponded once or twice. *Id.* at 100. Counsel stated:

> Being that I know that we were going to use the same playbook as the prior trial, it's fairly clear what the prosecution's position was going to be, and frankly, just making sure that we were able to address the knowable issues was what I thought was the best tactic at this time. And so meeting with him once, we discussed some of the issues of witness credibility and I think I addressed those in the second time around.

*Id.* at 101. Counsel testified he filed a motion for discovery and reviewed what he received from the state with Petitioner. *Id.* at 139. Counsel also stated he discussed with Petitioner the charges he was facing, his version of the facts, and his possible defenses. *Id.* at 139–40.

The PCR court rejected Petitioner's claim finding:

> This Court finds the Applicant's testimony is not credible, while also finding trial and appellate counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds trial counsel filed <u>Brady</u> and Rule 5 motions on the Applicant's behalf and reviewed the received discovery with the Applicant. This Court finds trial counsel discussed with the Applicant the elements of the charges against him and what the State was required to prove. This Court finds trial counsel discussed the Applicant's version of the facts and possible defenses with the Applicant.
>
> This Court finds the Applicant failed to meet his burden of proving trial counsel should have reviewed the transcript of the Applicant's previous trial and discussed it with the Applicant prior to trial. This Court finds trial

counsel gave credible testimony that he reviewed the Applicant's first trial transcript and used the transcript to develop his trial strategy. Counsel also gave credible testimony that he reviewed the first trial transcript with the Applicant during a jail visit. This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and that he was prejudiced as a result of counsel's performance.

*Id.* at 193.

In his response, Petitioner cites to the PCR record and counsel's testimony that he did not review the full transcript with Petitioner and argues there is a "genuine issue of material fact" concerning the lack of counsel's pretrial investigation and preparation. [ECF No. 39 at 12]. Petitioner alleges he was "unduly prejudiced by counsel's ineffectiveness." *Id.* Petitioner claims "the State PCR Court and the subsequent reviewing Court's decision was an unreasonable application of <u>Strickland</u>, <u>supra</u>, as well as objectively unreasonable in light of the evidence presented in the State Court proceeding." *Id.*

The undersigned has reviewed the record and finds the PCR court reasonably applied *Strickland* in finding counsel did not render ineffective assistance of counsel. The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while counsel's testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses

whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination and the undersigned can find no basis in the record on which to overturn the state court decision.

Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (holding that federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Petitioner has failed to show he is entitled to federal habeas corpus relief on Ground One and the undersigned recommends this ground be denied and dismissed with prejudice.

2.     Ground Two

Petitioner alleges his trial counsel was ineffective for failing to sufficiently challenge Dyson's identification of him. [ECF No. 1 at 7]. Petitioner claims his counsel failed to argue that "the show-up procedure used was improper, nor did he argue that the victim had identified another individual as the perpetrator." *Id.*

Counsel testified he did not recall investigating the origins of a photo with the

notation "B&L PD, 5:30 a.m., Wayne Harold Whisonant, victim was able to pick the suspect out of a lineup." [ECF No. 15-14 at 112]. Counsel stated it was his understanding that the photo was a picture of his client, however counsel noted Dyson testified he never identified Petitioner in a photo lineup. *Id.* at 111–13. Counsel testified he introduced the picture at trial because "it looked exactly like [his] client and the witness clearly identified the person in the picture as not being the person that robbed him on that evening." *Id.* at 147. Counsel testified he also challenged Dyson's identification of Petitioner in the *Neil v. Biggers* hearing.[6] *Id.* at 147. In response to queries about his questioning of Dyson, counsel stated:

Q:    When you say "discuss," do you mean while he was on the witness stand?

A:    Yes, that was in the testimony, that we tried to nail down where exactly—was he using the prior identification to say yes, that's the same person, or was it at the time of the incident was he making an identification saying yes, that is the person, not based on the prior case. I remember that conversation.

Q:    And did he make it clear as to when he had seen or identified Mr. Tolen?

A:    I don't remember that part. I remember him saying that I—the only identification I'm using is based on when the incident actually happened. I know he didn't reference—excuse me. I'm not sure if he referenced the previous trial's identification or not.

*Id.* at 129–30.

The PCR court rejected Petitioner's claim, finding:

---

[6] *Neil v. Biggers*, 409 U.S. 188 (1972) (establishing defendant's right to challenge pretrial identification by testing validity of identification as to suggestiveness of procedure and indicia of reliability).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have attacked the credibility of the victim's identification of the Applicant. This Court finds and the record reflects trial counsel sufficiently challenged the victim's identification of the Applicant. Prior to trial a <u>Neil v. Biggers</u> hearing was held and the Court concluded the victim's previous in-court identification of the Applicant was admissible. (Transcript 102). Trial counsel also cross-examined the victim about the basis of his in-court identification of the Applicant as the assailant. (Transcript 141:17-25). This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and that he was prejudiced as a result of counsel's performance.

. . .

This Court finds that the Applicant failed to meet his burden of proving trial counsel should have questioned the victim and law enforcement officers about a troubling photo that indicated the "victim was able to pick suspect out of a line up", (Applicant's Exhibit 1). . . .

This Court finds and the record reflects that the victim and law enforcement were both questioned about the photo which indicated the "victim was able to pick suspect of line up". During cross-examination of the victim, trial counsel elicited the following testimony about the photo: (Transcript 87:25-88: 19)

> Q:    I'm gonna show you a picture of—a piece of paper that you have in front of you has a picture of an individual. You stated to Mr. Maye that you never picked out the defendant here in any photo lineup. Is that correct?
> A:    That's correct.
> Q:    Okay, did you put that writing down on the top of that piece of paper?
> A:    No, I did not.
> Q:    Okay. Can you read what the writing says?
> A:    Yes, I can.
> Q:    Would you read it into the court please.
> A:    Victim was able to pick this suspect out of a lineup.
> Q:    Okay.
> A:    This never happened.
> Q:    Okay.
> A:    I never seen this picture before.
> Q:    Okay.

A:      Until now.

Q:      Okay. So you never picked out the victim (sic) from a lineup?

A:      Never.

During cross-examination of Officer Mark Whisenant, trial counsel elicited testimony from the officer that he never showed the victim a photo of the Applicant and that the victim was never able to identify anyone shortly after the robbery. This Court finds that counsel's performance was not deficient and that the Applicant was not prejudiced by trial counsel's questioning.

[ECF No. 15-14 at 197–99].

In his response, Petitioner argues the PCR court's findings were objectively unreasonable because the findings were not fully supported by the record. [ECF No. 39 at 15]. Petitioner alleges the PCR court relied on a small portion of the record in reaching its findings instead of assessing all the evidence presented as a whole. *Id.* Petitioner references Dyson's trial testimony, in which he was shown a picture and testified that the person in the picture did not rob him. *Id. at 16*. Petitioner alleges he was the individual in the picture and that Dyson's trial testimony thereby exonerated him. *Id.* at 15–16. Petitioner argues that "the errors he is complaining of has resulted in the conviction of an innocent person." *Id.* at 17.

The undersigned finds the PCR court reasonably found, based on the record before it, that trial counsel sufficiently challenged the basis of Dyson's identification of Petitioner. Counsel fully questioned Dyson about his previous identifications and the purported photographic line-up, and Dyson was steadfast that his identification of Petitioner was based on his view of him the night of the robbery. [ECF No. 15-13 at 41–57, 94–122]. Petitioner has not shown that the state court's analysis of this issue

misapplied clearly established federal law or, even if there were an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Petitioner has also not shown that the PCR court reached an unreasonable factual determination on this issue. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground, and the undersigned recommends Ground Two be dismissed.

        3.    Ground Three

Petitioner claims his trial counsel was ineffective in failing to cross-examine his codefendant regarding his potential sentences. [ECF No. 1 at 8].

During the PCR hearing, counsel testified he believed he questioned Brannon about his motivation for testifying for the state. [ECF No. 15-14 at 125]. Counsel stated Brannon testified during direct that he had two consecutive 15-year sentences suspended to probation. *Id.*

> Q:    But nobody testified that what he was looking at was the same thing that your client was looking at, which was 10 to 30. Did you not think it important to let the jury know that he was motivated because he was looking at a 10- to 30-year sentence, too, but for his cooperation he seemingly got probation?
>
> A:    I believe that inference did come out to the jury.
>
> Q:    Do you think that anywhere in this transcript it indicates he was facing a 10- to 30-year sentence?
>
> A:    It is my understanding that in the testimony he said he was going to be facing how much sentence it was and he got a deal. The exact amount that my client was facing at the time, I'm not—I don't think it said the exact amount that my client was facing, but I do understand that there was a sentence that was put forth and the jury heard that he was also facing a sentence and got that sentence commuted for testifying.

Q:      To probation?

A:      To probation, yes, sir.

Q:      But didn't he testify that what he actually received but not what he
        potentially could have received?

A:      I don't remember about that.

*Id.* at 126.

The PCR court rejected this claim, finding:

This Court finds the Applicant failed to meet his burden of proving trial
counsel should have cross-examined the Applicant's co-defendant
regarding what deal he was offered to testify against the Applicant and the
amount of time he was facing. The purpose of cross-examination at trial is
"to show a prototypical form of bias on the part of the witness, and thereby
to expose to the jury the facts from which jurors could appropriately draw
inferences relating to the reliability of the witness." State v. Gillian, 360
S.C. 433, 451, 602 S.E.2d 62, 71 (Ct. App. 2004) aff'd as modified, 373
S.C. 601, 646 S.E.2d 872 (2007) (citing Delaware v. Van Arsdall, 475 U.S.
673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

This Court finds trial counsel adequately impeached the credibility of the
Applicant's co-defendant Wade Brannon. On direct examination, the State
elicited testimony that Brannon was originally charged with armed robbery
and was allowed to plead guilty to strong armed robbery (Transcript
180:22–181:2). The State also elicited testimony about the sentence that
Brannon received after pleading guilty. On cross-examination, trial counsel
was precluded from impeaching the victim on several prior convictions.
However, trial counsel was able to elicit testimony from Brannon on a
pending criminal domestic violence-second offense charge (Transcript 187:
2–4) and his long term drug use (Transcript 187:5–22). Trial counsel also
elicited testimony from Brannon that he had used crack the night of the
incident and highlighted Brannon's inability to recall several aspects of the
event due to drug use. (Transcript 12: 3–10). This Court finds the jury was
apprised of the benefit that Brannon received for testifying against the
applicant and the amount of time he received for his testimony. This Court
finds the Applicant has failed to carry his burden of proving that counsel's
performance was deficient and that he was prejudiced as a result of
counsel's performance.

[ECF No. 15-14 at 196–97].

In his response, Petitioner argues the PCR court's decision was unreasonable and controlled by an error of law. [ECF No. 39 at 23]. Petitioner argues the failure to impeach Brannon with the possible sentences he faced was critical because credibility was the key issue at trial. *Id.* at 24. Petitioner states "it is near impossible for a reviewing court to conclude that such error would not have had influence on the jury's verdict, or had but very slight effect [] had they known Brannon was facing 30 years." *Id.*

The undersigned finds the jury was informed about Brannon's potential sentences and therefore Petitioner has not shown by clear and convincing evidence that the PCR court reached an unreasonable factual determination on this issue. *See Evans v. Smith*, 220 F.3d at 312; 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Further, given the evidence of Petitioner's guilt introduced at his trial as outlined in the Factual Background section above, including Dyson's identification of Petitioner as the gunman [ECF No. 15-13 at 84–85], and Brannon's testimony that Petitioner was the gunman when he and Petitioner robbed Dyson, *id.* at 137–40, the undersigned finds Petitioner has failed to show he was prejudiced by his counsel's cross-examination of Brannon. The undersigned recommends Ground Three be dismissed.

4.    Ground Four

Petitioner agues his trial counsel was ineffective for failing to make a *Batson* motion following jury selection. [ECF No. 1 at 10].

At PCR, trial counsel was asked if he understood he could make a *Batson* motion

because the prosecutor used all his strikes for black members of the venire. ECF No. 15-

14 at 109]. Trial counsel testified:

> My understanding at the time had to do with the composite, the panel of the jury, and that if races were struck so that the panel was not—so that the panel did not have any black people or races other than the defendant, then a *Batson* motion could be made. Whether he used all his strikes to strike people who were black and the panel continued to have black people in there, I  probably would not draw a distinction at that time.

*Id.*  Counsel testified he thought the jury "was as blended a group as one could request in

Saluda." *Id.* Counsel did not think the jury was objectionable and stated he thought they

"did well in picking a jury." *Id.* at 146.

The PCR court rejected this claim, stating:

> This Court finds that the Applicant failed to meet his burden of proving trial counsel should have made a Batson motion prior to the start of trial. In Batson the Supreme Court held the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents the prosecution from striking potential jurors on the basis of race. 476 U.S. at 89, 106 S.Ct. 1712. In Georgia v. McCollum, the Supreme Court expanded Batson, holding "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Thus, during jury selection, either the defendant or the State may oppose the peremptory challenge of a juror who is a member of a cognizable racial group. Once a peremptory challenge is opposed, the trial court must, upon request, conduct a Batson hearing and adhere to the procedures set forth in Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and adopted by our supreme court in State v. Adams, 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996).
>
> The Court finds trial counsel was not ineffective for failing to make a Batson motion at trial. Trial counsel gave credible testimony that he understood the purpose of a Batson motion at trial and he was satisfied with the racial composition of the jury. This Court finds the jury selected during the Applicant's trial, including the alternates, was racially diverse and comprised of two black males, three black females, one Hispanic male, three white males, and five white females. This Court finds the racial

composite of the jury was not objectionable. This Court finds the Applicant
has failed to carry his burden of proving that counsel's performance was
deficient and that he was prejudiced as a result of counsel's performance.

[ECF No. 15-14 at 194].

In his response, Petitioner argues the PCR court's application of *Strickland* was objectively unreasonable in light of the evidence presented. [ECF No. 39 at 27]. Petitioner claims counsel did not lodge a *Batson* objection because he did not know he could, and alleges "[c]learly this is ineffective assistance at it's worst and the PCR Court's denial on this issue is not supported by the trial record and counsel testimony at the PCR hearing." *Id.* at 27.

The undersigned finds the PCR court reasonably found Petitioner failed to state a claim for relief under *Strickland* and *Batson*. The record before the court supports the PCR court's conclusion that trial counsel understood the purpose of *Batson*, and was satisfied with, and did not find objectionable, the racial composition and diversity of the jury. The PCR court's conclusion that Petitioner failed to carry his burden of proving counsel's performance was deficient or prejudicial was not contrary to or an unreasonable application of clearly established federal law. See *Harrington v. Richter*, 131 S. Ct. 770, 791–92 ("The likelihood of a different result must be substantial, not just conceivable."). Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. The undersigned recommends Ground Four be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion

for summary judgment [ECF No. 16] be granted and the petition be dismissed with prejudice.

      IT IS SO RECOMMENDED.

                              *Shiva V. Hodges*

July 7, 2016                            Shiva V. Hodges
Columbia, South Carolina          United States Magistrate Judge

     **The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).