UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Frank Tolen, Jr., | ) | Civil Action No.: 1:15-cv-02503-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Larry Cartledge, Warden, Perry | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Frank Tolen, Jr., a state prisoner initially represented by counsel but currently

proceeding pro se, filed the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

on June 22, 2015. *See* [ECF No. 1]. Pending before the Court is Respondent's motion for summary

judgment [ECF No. 16] pursuant to Rule 56 of the Federal Rules of Civil Procedure. This matter is

before the Court with the Report and Recommendation (R & R) of United States Magistrate Judge

Shiva V. Hodges.[1] *See* [ECF No. 41]. The Magistrate Judge recommended granting the

Respondent's motion for summary judgment and dismissing Petitioner's petition with prejudice.

For the reasons stated below, the Court adopts the Magistrate Judge's R & R, grants Respondent's

motion for summary judgment, and dismisses Petitioner's § 2254 petition with prejudice.

## Facts and Procedural History

This matter arises from the criminal conviction and sentence of Petitioner, Frank Tolen, Jr.

In January 1998, Petitioner was indicted by a Saluda County grand jury for armed robbery and

possession of a pistol by a person convicted of a crime of violence. [Indictments, ECF No. 15-11 at

---

[1] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
73.02(B)(2)(c) for the District of South Carolina.

165-66; 168-69]. Petitioner and a co-defendant, Wade Brannon ("Brannon"), were accused of

robbing Oaton Dyson at gunpoint as he napped in his 18-wheeler in Saluda County. During the

robbery, Dyson escaped to a nearby house when Petitioner fumbled with his gun. Petitioner and

Brannon pursued Dyson but ran away after Dyson screamed and lights turned on in the

neighborhood. Brannon pled guilty and testified against Petitioner. Petitioner proceeded to trial and

was convicted and sentenced to life without parole for the armed robbery pursuant to S.C. Code

Ann. § 17-25-45 and five years, concurrent, for the gun charge. [ECF No. 15-11 at 120].

Petitioner filed his first application for post-conviction relief (PCR) on April 15, 1998

alleging, among other things, failure to file a direct appeal. On November 17, 2000, Judge Peeples

granted Petitioner a belated appeal and dismissed Petitioner's other grounds without prejudice.

[ECF No. 15-11 at 147]. Petitioner filed a belated notice of appeal from his conviction and sentence

on November 28, 2000. On March 22, 2002, the South Carolina Supreme Court denied Petitioner's

petition for writ of certiorari and dismissed his direct appeal.

Petitioner filed his second PCR application on May 17, 2002. Petitioner alleged claims of

ineffective assistance of counsel and an illegal sentence. Judge Goode granted Petitioner's second

PCR application finding that trial counsel was ineffective and that the State failed to provide

sufficient written notice to Petitioner of its intent to seek a sentence of life without parole as

required by S.C. Code Ann. § 17-25-45(H). [ECF No. 15-12 at 17-24]. The State appealed the

PCR court's decision. On December 19, 2005, the South Carolina Supreme Court vacated the PCR

court's rulings except as to the ruling that the State failed to give proper notice of its intent to seek a

sentence of life imprisonment without parole pursuant to S.C. Code Ann. § 17-25-45(H). *Id*. at 26.

The Supreme Court then remanded the matter for a new trial on Petitioner's armed robbery and

possession of a pistol by a person convicted of a crime of violence charges. *Id*. at 27.

The trial court appointed O. Lee Sturkey, Esq. to represent Petitioner at his retrial. [ECF No. 15-14 at 27]. After Sturkey indicated that he had a conflict and could not represent Petitioner, the court appointed Andrew Thompson, Esq. *Id*. at 29.

Petitioner was retried on the armed robbery and gun charge on November 7-9, 2006. The jury found Petitioner guilty on both counts and the Court sentenced him to life without parole on the armed robbery charge and 5 years, time served, on the gun charge. *Id*. at 20.

Petitioner filed a timely notice of appeal and was represented by Katherine H. Hudgins, Esq. On appeal, Petitioner presented the following issues:

> 1. Did Tolen's second trial after prevailing in post conviction relief violate the constitutional prohibition against double jeopardy when the relief granted and later affirmed by the South Carolina Supreme Court affected only sentencing and not the actual conviction?
>
> 2. Did the court lack subject matter jurisdiction to try Tolen a second time on the same indictment and same charges when the error found by the PCR court and the South Carolina Supreme Court warranting remand went solely to sentencing and had no effect on the conviction?

[ECF No. 15-1 at 4].

On May 26, 2009, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. [ECF No. 15-3]. The remittitur was issued on June 12, 2009. [ECF No. 15-4].

On June 30, 2009, Petitioner filed a PCR application alleging an illegal sentence and ineffective assistance of trial and appellate counsel. [ECF No. 15-14 at 38-46]. Petitioner's PCR counsel filed an amended PCR application on January 25, 2013, alleging additional grounds of ineffective assistance of trial and appellate counsel. A post-conviction relief ("PCR") hearing was

3

held on January 30, 2013. Petitioner was represented by Stephen D. Geoly, Esq. In an order filed April 1, 2013, the PCR court denied relief and dismissed Petitioner's PCR application.

Petitioner timely appealed and was represented by Mr. Geoly and E. Charles Grose, Jr., Esq. on the PCR appeal. Petitioner raised the following issues on appeal:

I.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to question the validity of the eyewitness identification of petitioner by the victim?

II.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to impeach the cooperating co-defendant about the potential sentences he faced for armed robbery if he had not cooperated with law enforcement and proceeded to trial?

III.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law when trial counsel failed to make a Batson motion because he did not understand the law?

IV.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because of complete breakdown of the attorney-client relationship when trial counsel refused to meet with Petitioner at the detention, failed to review with Petitioner the transcript of the prior trial, and failed to investigate the evidence the State intended to use at trial and the cumulative error denied petitioner a fair trial?

V.    Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law when appellate counsel failed to raise and brief the trial court's erroneous admission, over objection, of information that the investigating officer received from deceased witness

Frontis Smith, when that information was inadmissible hearsay, violated the Confrontation Clause, and constituted prejudicial comments on Petitioner's character?

VI.     Was petitioner denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and South Carolina law because trial counsel failed to object to his being [retried] after this Court remanded his case for resentencing only?

[ECF No. 15-5 at 8]. The South Carolina Supreme Court denied Petitioner's petition for a writ of certiorari on December 10, 2014, and remitted the matter to the lower court on December 30, 2014. [ECF No. 15-8; 15-9].

Petitioner then filed the current petition, which alleges four grounds. In ground one, Petitioner alleges his trial counsel was ineffective for failing to sufficiently 1) prepare for trial; 2) investigate; and 3) meet with Petitioner. In ground two, Petitioner alleges his trial counsel was ineffective for failing to sufficiently challenge the victim's identification of the Petitioner. Ground three alleges trial counsel was ineffective in failing to cross-examine Petitioner's co-defendant regarding his potential sentence. Ground four alleges trial counsel was ineffective for failing to make a *Batson* motion following jury selection.

Respondent filed a return and motion for summary judgment on November 18, 2015. On July 7, 2016, the Magistrate Judge issued an R&R recommending that Respondent's motion for summary judgment be granted and Petitioner's petition dismissed with prejudice. Petitioner filed objections to the R&R on October 24, 2016.

## **Legal Standards of Review**

### I.    **Review of the Magistrate Judge's Report & Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has

no presumptive weight.  The responsibility to make a final determination remains with the Court.

*Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The Court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  The right to *de novo* review may be waived by the failure to file timely objections.

*Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed.

*Id*.  However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations."  *Id.*

## II.   Summary Judgment Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion

6

for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## III.  Federal Habeas Review under 28 U.S.C. § 2254

Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, in considering Petitioner's ineffective assistance of counsel claim, the Court's review is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d). *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (explaining federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding").

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of

reasonableness." *Id*. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." *Id*. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also, Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); *Spencer v. Murray*, 18 F.3d 229,233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy."). To satisfy *Strickland's* prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." *Spencer*, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998). Additionally, to obtain habeas corpus relief, Petitioner must establish that the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

**Discussion**

The Magistrate Judge recommended that Respondent's motion for summary judgment be granted and Petitioner's petition dismissed with prejudice. As to each of Petitioner's four grounds, the Magistrate Judge found that Petitioner was not entitled to habeas relief. Petitioner filed objections to the R&R on October 24, 2016 setting forth six objections to the Magistrate Judge's R&R. The Court will address each objection below.

**Objection 1**

In his first objection, Petitioner objects to the Magistrate Judge relieving Petitioner's retained counsel. On February 22, 2016, Petitioner's retained counsel, Jeremy Thompson, Esq., filed an amended *ex parte* motion to withdraw as counsel citing a fundamental breakdown in the attorney-client relationship. The fundamental breakdown concerned a disagreement between Petitioner and Thompson on whether to withdraw one of Petitioner's allegations for relief. On February 29, 2016, Petitioner filed a response in opposition to Thompson's motion to withdraw arguing that Thompson had not provided an adequate reason for wanting to abandon one of Petitioner's claims and that there was no "irreparable damage" to the attorney-client relationship. The Magistrate Judge granted Thompson's motion to withdraw by Text Order on April 22, 2016.

As an initial matter, Petitioner's objection to the Magistrate Judge relieving his retained counsel is untimely. Pursuant to Rule 72(a), a party has 14 days to file an objection to a Magistrate Judge's order on a nondispositive matter. Petitioner did not file an objection within the specified time. Petitioner's failure to timely raise an objection to the Magistrate Judge's order relieving Thompson constitutes a waiver of the issue as Rule 72(a) provides that "[a] party may not assign as error a defect in the order not timely objected to." *See, e.g., Giganti v. Gen–X Strategies, Inc.*, 222

F.R.D. 299, 304 n. 8 (E.D.Va.2004); *See also Farmer v. McBride*, 177 Fed. Appx. 327, 331 (4th Cir. 2006).

Even if Petitioner had not waived his right to challenge the Magistrate Judge's order relieving Thompson, Thompson's motion to withdraw and Petitioner's response in opposition reflect a fundamental disagreement as to what issues to present in this case. The apparent inability to reconcile those differences represents a fundamental breakdown of the attorney-client relationship. Accordingly, the Magistrate Judge's order relieving Thompson as retained counsel for the Petitioner was not clearly erroneous or contrary to law.[2] Petitioner's first objection is overruled.

**Objection 2**

Petitioner objects to the Magistrate Judge's "factual background" arguing the Magistrate Judge appears to have adopted the Respondent's factual background. This objection is without merit. There is no basis to conclude that the Magistrate Judge merely adopted Respondent's factual background. The factual background set forth by the Magistrate Judge is drawn from the nearly 1000 pages of state court records that were filed along with Respondent's motion for summary judgment. Petitioner's second objection is overruled.

**Objection 3 and Ground One of the Petition**

In his third objection, Petitioner objects to the Magistrate Judge's adoption of the PCR court's findings that Petitioner was not credible, while counsel's testimony was credible. This objection relates to ground one of Petitioner's habeas petition, which alleges that trial counsel was ineffective for failing to sufficiently 1) prepare for trial; 2) investigate; and 3) meet with Petitioner.

---

[2] There is no Sixth Amendment right to counsel to pursue a petition for habeas corpus. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (stating prisoners have no constitutional right to counsel in mounting collateral attacks on convictions; right to appointed counsel extends to the first appeal and no further).

The PCR court rejected Petitioner's claim after finding Petitioner's testimony not credible and trial counsel's testimony was credible. The PCR court found that trial counsel adequately conferred with Petitioner, conducted a proper investigation, and was thoroughly competent in his representation. The PCR court concluded that Petitioner failed to carry his burden of proving trial counsel's performance was deficient and that he was prejudiced as a result of counsel's performance.

The Magistrate Judge found the PCR court's credibility determination was entitled to deference and that Petitioner had "shown no cause to discount the PCR court's credibility determination." Additionally, the Magistrate Judge found that Petitioner failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the record before it.

The PCR court rejected Petitioner's claim in ground one finding:

> This Court finds the Applicant's testimony is not credible, while also finding trial and appellate counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation. This Court finds trial counsel filed Brady and Rule 5 motions on the Applicant's behalf and reviewed the received discovery with the Applicant. This Court finds trial counsel discussed with the Applicant the elements of the charges against him and what the State was required to prove. This Court finds trial counsel discussed the Applicant's version of the facts and possible defenses with the Applicant.

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have reviewed the transcript of the Applicant's previous trial and discussed it with the Applicant prior to trial. This Court finds trial counsel gave credible testimony that he reviewed the Applicant's first trial transcript and used the transcript to develop his trial strategy. Counsel also gave credible testimony that he reviewed the first trial transcript with the Applicant during a jail visit. This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and that he was prejudiced as a

11

result of counsel's performance.

[ECF No. 15-14 at 193].

Petitioner must establish that the PCR court's ruling "was contrary to, or involved an unreasonable application of, clearly established federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Petitioner has failed on both accounts.

Within his third objection to the R&R, Petitioner contends the Magistrate Judge failed to independently review the record. Petitioner argues trial counsel's PCR court testimony regarding his review of the first trial transcript with Petitioner is inconsistent with the PCR court's findings. Petitioner, however, is misconstruing the PCR court's words. Trial counsel testified that he reviewed the first trial transcript several times and that he and Petitioner reviewed specific portions of the transcript together. [ECF No. 15-14 at 100]. The PCR court found that Petitioner did not establish that counsel "should have reviewed the transcript of the Applicant's previous trial and discussed it with the Applicant prior to trial." [ECF No. 15-14 at 193]. The PCR court stated "[c]ounsel also gave credible testimony that he reviewed the first trial transcript with the Applicant during a jail visit." *Id.* Trial counsel's testimony was not inconsistent with the PCR court's ruling and the PCR court's ruling was not an unreasonable determination of the facts in light of trial counsel's testimony at the PCR hearing.

Petitioner also argues his case was trial counsel's first criminal trial and that trial counsel inappropriately sought advice from Petitioner's previous counsel, who had withdrawn due to a conflict of interest. Petitioner further claims trial counsel inappropriately sought advice from the prosecution. As part of his preparations for trial, counsel testified that he spoke to the 11th Circuit

12

Public Defender, Mr. Sturkey, about proper forms of objections, discussing cases with clients, and the general trial procedure for criminal trials. [ECF NO. 15-14 at 32, 34].  Counsel also testified that he discussed the case with the prosecution several times in their offices and that Assistant Solicitor Ervin Maye referred him to the prior trial transcript and told him the prosecution intended to use the same strategy or plan as they did in the first case. *Id*. at 97-98.  There was nothing improper with trial counsel contacting the Public Defender regarding the proper form of objections, client relations, or general trial procedure.  Counsel's PCR testimony shows that counsel discussed general issues and did not disclose any case specific information to the Public Defender.  As to trial counsel's discussions with the prosecution, those discussions were not only proper, but advisable.  Trial counsel did not reveal his own trial strategy to the prosecution, but rather gained useful information on the prosecution's trial strategy.

Even though this was trial counsel's first criminal trial, Petitioner has failed to demonstrate that counsel's trial preparation and/or pretrial investigation was constitutionally deficient.  The PCR court found trial counsel adequately conferred with Petitioner, conducted a proper investigation, and was thoroughly competent in his representation.  The PCR court found trial counsel's testimony to be credible and Petitioner's testimony to be not credible.  Petitioner has shown no cause to discount the PCR court's credibility determination and has failed to establish that the PCR court's rejection of his claim in ground one was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on ground one and his third objection is overruled.

**Objection 4 and Ground Two of the Petition**

Petitioner argues in his fourth objection that the Magistrate Judge erred by merely adopting the PCR court's erroneous findings without conducting an independent review of the record. Petitioner suggests an evidentiary hearing is required to fully resolve the issue. Petitioner's fourth objection relates to ground two of the petition, which alleges trial counsel was ineffective for failing to sufficiently challenge the victim's identification of the Petitioner. The Magistrate Judge recommended granting summary judgment with respect to ground two.

Petitioner claims that the victim's ("Dyson") testimony demonstrates his actual innocence. Petitioner relies on Dyson's trial testimony, in which he was shown a picture and testified that the person in the picture did not rob him. Petitioner also claims a photograph of him was improperly used in an out-of-court photo line-up where Dyson allegedly identified Petitioner as the suspect. Petitioner maintains that Dyson's inability to identify Petitioner in the photograph during the trial demonstrates his innocence.

The following exchange between trial counsel and Dyson concerning the photograph of Petitioner is the primary basis for Petitioner's claim that Dyson's testimony exonerates him:

Q:      I'm gonna show you this piece of paper. Can you describe what is on this piece of paper.

A.      A picture.

Q.      Of who?

A.      I don't know who that is.

Q.      You don't know who that is.

A.      No.

Q.      Is that a picture of the defendant?

14

A.  At the time of the robbery that wasn't the person that – that

robbed me.

Q.  This is not the individual that robbed you.

A.  At the time. This must been a recent picture of him at the

time.

Q.  Okay.

A.  He didn't look nothin' like that.

Q.  This doesn't look anything like the defendant.

A.  No.  At the time of the robbery.  That's been 10 years ago.

Maybe he –if that's him he done changed quite a bit.

Q.  So this picture doesn't look anything like the individual

sitting over there at my table.

A.  At the time of the robbery.

[ECF No. 15-13 at 106-07].

Despite Petitioner's claims of actual innocence, Dyson positively identified Petitioner as the

man who robbed him and counsel was not ineffective for failing to establish Petitioner's claimed

innocence through Dyson's testimony. *See* [ECF No. 15-13 at 41-57, 94-122].

With respect to ground two, the PCR court found:

> This Court finds the Applicant failed to meet his burden of proving
> trial counsel should have attacked the credibility of the victim's
> identification of the Applicant. This Court finds and the record
> reflects trial counsel sufficiently challenged the victim's
> identification of the Applicant. Prior to trial a Neil v. Biggers
> hearing was held and the Court concluded the victim's previous
> in-court identification of the Applicant was admissible.

(Transcript 102). Trial counsel also cross-examined the victim about the basis of his in-court identification of the Applicant as the assailant. (Transcript 141:17-25). This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and that he was prejudiced as a result of counsel's performance.
. . .

This Court finds that the Applicant failed to meet his burden of proving trial counsel should have questioned the victim and law enforcement officers about a troubling photo that indicated the "victim was able to pick suspect out of a line up", (Applicant's Exhibit 1). . . .

This Court finds and the record reflects that the victim and law enforcement were both questioned about the photo which indicated the "victim was able to pick suspect of line up". During cross-examination of the victim, trial counsel elicited the following testimony about the photo: (Transcript 87:25-88: 19)

Q: I'm gonna show you a picture of—a piece of paper that you have in front of you has a picture of an individual. You stated to Mr. Maye that you never picked out the defendant here in any photo lineup. Is that correct?

A: That's correct.

Q: Okay, did you put that writing down on the top of that piece of paper?

A: No, I did not.

Q: Okay. Can you read what the writing says?

A: Yes, I can.

Q: Would you read it into the court please.

A: Victim was able to pick this suspect out of a lineup.

Q: Okay.

A: This never happened.

Q: Okay.

A: I never seen this picture before.

Q: Okay.

A: Until now.

Q: Okay. So you never picked out the victim (sic) from a lineup?

A: Never.

During cross-examination of Officer Mark Whisenant, trial counsel elicited testimony from the officer that he never showed the victim a photo of the Applicant and that the victim was never able to identify anyone shortly after the robbery. This Court finds that counsel's performance was not deficient and that the Applicant was not prejudiced by trial counsel's questioning.

[ECF No. 15-14 at 197–99].

Petitioner has failed to demonstrate that the PCR court's rejection of ground two was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. Trial counsel thoroughly cross-examined Dyson regarding his identification of Petitioner during the Neil v. Biggers hearing and during the trial itself. Dyson, nevertheless, testified that Petitioner was one of the individuals who robbed him at gunpoint. The jury heard Dyson's testimony regarding the photograph but did not view Dyson's testimony as exonerating Petitioner. This Court also does not believe that Dyson's testimony exonerates Petitioner. Petitioner has failed to demonstrate that counsel's performance was deficient and has failed to demonstrate any prejudice from counsel's questioning of Dyson.

Petitioner is not entitled to relief on ground two and his fourth objection is overruled.

**Objection 5 and Ground Three of the Petition**

In his fifth objection, which relates to ground three of the petition, Petitioner contends the Magistrate Judge erred in concluding the jury was informed about his co-defendant's (Wade Brannon) potential sentences. Ground three of the petition alleges trial counsel was ineffective in failing to cross-examine Brannon regarding his potential sentence.

The PCR court rejected Petitioner's claim in ground three, finding:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have cross-examined the Applicant's co-defendant regarding what deal he was offered to testify against the Applicant and the amount of time he was facing. The purpose of cross-examination at trial is "to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." State v. Gillian, 360 S.C. 433, 451, 602 S.E.2d 62, 71 (Ct. App. 2004) aff'd as modified, 373 S.C. 601, 646 S.E.2d 872 (2007) (citing Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
>
> This Court finds trial counsel adequately impeached the credibility of the Applicant's co-defendant Wade Brannon. On direct examination, the State elicited testimony that Brannon was originally charged with armed robbery and was allowed to plead guilty to strong armed robbery (Transcript 180:22–181:2). The State also elicited testimony about the sentence that Brannon received after pleading guilty. On cross-examination, trial counsel was precluded from impeaching the victim on several prior convictions. However, trial counsel was able to elicit testimony from Brannon on a pending criminal domestic violence-second offense charge (Transcript 187:2–4) and his long term drug use (Transcript 187:5–22). Trial counsel also elicited testimony from Brannon that he had used crack the night of the incident and highlighted Brannon's inability to recall several aspects of the event due to drug use. (Transcript 12: 3–10). This Court finds the jury was apprised of the benefit that Brannon received for testifying against the applicant and the amount of time he received for his testimony. This Court finds the Applicant has failed to carry

> his burden of proving that counsel's performance was deficient and
> that he was prejudiced as a result of counsel's performance.

[ECF No. 15-14 at 196-97].

Petitioner argues the jury was never informed about Brannon's potential penalty for armed robbery. While Petitioner is technically correct, any error by the Magistrate Judge in finding the jury was informed about Brannon's potential sentences is harmless. The jury was informed that Brannon was originally charged with armed robbery but was allowed to plead to strong arm robbery. [ECF No. 15-13 at 143-44]. The jury also heard that after giving testimony in Petitioner's first trial, Brannon was sentenced to two 15 year sentences suspended to 5 years probation. *Id*. at 144. On cross examination, trial counsel established that Brannon had a pending criminal domestic violence charge and that he was a long term crack cocaine user and had used crack cocaine on the night of the incident. *Id*. at 150. Trial counsel got Brannon to admit that smoking crack cocaine affected his memory and that he did not remember a lot about the incident. *Id*. at 155. Because the jury was aware of the benefit Brannon received from testifying against Petitioner (i.e. pleading to strong arm robbery as opposed to armed robbery and receiving a probationary sentence), Petitioner has failed to show that trial counsel was deficient for failing to question Brannon regarding the potential sentence for armed robbery. Trial counsel adequately cross-examined Brannon and brought out important impeachment material regarding Brannon's long term use of crack cocaine and pending criminal domestic violence charge.

Petitioner has also failed to establish any prejudice resulting from trial counsel's cross examination of Brannon. In this case, there was overwhelming evidence of Petitioner's guilt. The victim positively identified Petitioner as the man who robbed him and testified that he had 10 to 20

minutes to observe the Petitioner in close proximity inside the well-lit cab of his truck. Petitioner's

co-defendant, Brannon, testified that he and Petitioner robbed the victim at gunpoint. Petitioner and

Brannon were apprehended together after running into the woods away from law enforcement. In

light of this overwhelming evidence of guilt, Petitioner has failed to demonstrate that the result of

the proceeding would have been different had the jury been made aware of the potential sentence for

armed robbery.

Because trial counsel's performance regarding his cross-examination of Brannon was not

deficient and did not prejudice Petitioner, the PCR court's rejection of that claim was not contrary

to, or an unreasonable application of, clearly established federal law or an unreasonable

determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on

ground three and his fifth objection is overruled.

**Objection 6 and Ground Four of the Petition**

Petitioner's final objection relates to ground four of his petition, which alleges trial counsel

was ineffective for failing to make a *Batson* motion following jury selection. During jury selection,

the State used all five of its strikes to strike black individuals. Trial counsel did not make a *Batson*

motion. The jury, including the alternates, contained two black males, three black females, one

Hispanic male, three white males, and five white females.

Under the three-part test created by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79,

96-97, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986), a defendant may establish a prima facie case of

discrimination by the prosecutor by showing that: (1) the defendant is a member of a distinct racial

group; (2) the prosecutor has used the challenges to remove from the venire members of the

defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an

inference that the prosecutor discriminated in his or her selection of the jury pool. *Id.* Once the defendant establishes a prima facie case, the burden shifts to the prosecution to advance a race-neutral or non-discriminatory reason for the exercise of the peremptory challenges. *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. The trial court then determines whether the defendant has proven intentional or purposeful discrimination. *Id.*; *Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). A movant may show purposeful discrimination by demonstrating that the opposing party's explanation is a mere pretext for racial discrimination. *United States v. Farrior*, 535 F.3d 210, 221 (4th Cir. 2008). In determining whether there has been "purposeful discrimination," the court may consider any relevant factor including the ultimate racial composition of the jury. *United States v. Joe*, 928 F.2d 99, 103 (4th Cir. 1991).

At the PCR hearing, trial counsel testified regarding his understanding of *Batson*:

> A. My understanding at the time had to do with the composite, the panel of the jury, and that if races were struck so that the panel was not - - so that the panel did not have any black people or races other than the defendant, then a Batson motion could be made. Whether he used all his strikes to strike people who were black and the panel continued to have black people in there, I probably would not draw a distinction at that time.
>
> Q. You didn't realize you could make a motion since there were other blacks on the jury, is that what you're saying?
>
> A. That's what I'm saying, yes.
>
> Q. So even though he struck five blacks, you didn't realize because you had a couple - - or four in this case - - that ended up on the jury, you thought that's not a permissible motion to make?
>
> A. I didn't think about making it at the time because of the panel - - because of the composition of the panel.

[ECF No. 15-14 at 109-10].

The Magistrate Judge recommended granting summary judgment as to ground four finding the PCR court's rejection of that claim was not contrary to or an unreasonable application of clearly established federal law. In rejecting Petitioner's claim related to *Batson*, the PCR court stated:

> This Court finds that the Applicant failed to meet his burden of proving trial counsel should have made a Batson motion prior to the start of trial. In Batson, the Supreme Court held the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents the prosecution from striking potential jurors on the basis of race. 476 U.S. at 89, 106 S.Ct. 1712. In Georgia v. McCollum, the Supreme Court expanded Batson, holding "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Thus, during jury selection, either the defendant or the State may oppose the peremptory challenge of a juror who is a member of a cognizable racial group. Once a peremptory challenge is opposed, the trial court must, upon request, conduct a Batson hearing and adhere to the procedures set forth in Purkett v. Elem., 514 U.S. 765, 767, 115 S.Ct. 1769,131 L.Ed.2d 834 (1995), and adopted by our supreme court in State v. Adams, 322 S.C. 114, 124, 470 S.E.2d 366, 372 (1996).

> The Court finds trial counsel was not ineffective for failing to make a Batson motion at trial. Trial counsel gave credible testimony that he understood the purpose of a Batson motion at trial and he was satisfied with the racial composition of the jury. This Court finds the jury selected during the Applicant's trial, including the alternates, was racially diverse and comprised of two black males, three black females, one Hispanic male, three white males, and five white females. This Court finds the racial composite of the jury was not objectionable. This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and that he was prejudiced as a result of counsel's performance.

[ECF No. 15-14 at 194].

Even assuming trial counsel was deficient for failing to make a *Batson* motion, *Batson* errors

are not presumptively prejudicial when raised in an ineffective assistance of counsel claim. *United States v. King*, 36 F. Supp. 2d 705, 710 (E.D. Va. 1999). To establish prejudice within the *Strickland* framework on a claim involving trial counsel's failure to make a *Batson* motion, Petitioner must show "that, but for his trial counsel's ineffectiveness in failing to make certain arguments, the result of the *Batson* challenge would have been different, i.e. the trial court would have found the prosecutor in violation of *Batson*." *Juniper v. Zook*, 117 F. Supp. 3d 780, 792 (E.D. Va. 2015). Even though the State used all of its peremptory challenges to strike black individuals, Petitioner has offered no actual evidence: 1) that the State did not have a race neutral explanation for its strikes; or 2) that trial counsel would have been able to establish that any potential race neutral explanation would have been pretextual. Even if trial counsel had requested a *Batson* hearing and made a prima facie showing, Petitioner cannot demonstrate prejudice in failing to make a *Batson* motion where there is no evidence that the State lacked a race neutral explanation and no evidence of purposeful discrimination. Petitioner has failed to establish a reasonable probability that the trial court would have found the State in violation of *Batson* if trial counsel had made a *Batson* motion. As the PCR court observed, Petitioner's jury was racially diverse. Because Petitioner has failed to demonstrate that he suffered any prejudice as a result of trial counsel's failure to make a *Batson* motion, the PCR court's rejection of that claim was not contrary to, or an unreasonable application of, clearly established federal law.[3] As a result, Petitioner is not entitled to

---

[3]    Trial counsel testified that he was satisfied with the racial composition of the selected jury. While *Batson* is silent as to the remedy for a *Batson* violation, trial courts have developed different approaches for addressing *Batson* errors. For instance, one common approach is to seat the improperly stricken juror. Another common approach involves drawing an entirely new petit jury from the panel. If trial counsel had made a successful *Batson* challenge, Petitioner could have ended up with a second jury that was less racially diverse than the first jury. Trial counsel was satisfied with the racial composition of the jury, despite his apparent misunderstanding regarding the law applicable to *Batson*, and the composition was in fact diverse as noted by the PCR court, which found no deficiency or prejudice. [ECF No. 15-14 at 194].

relief on ground four.  Petitioner's sixth objection is overruled.

## Certificate of Appealability

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating reasonable jurists would find the court's assessment of the constitutional claims is debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). When the district court denies relief on procedural grounds, the prisoner must demonstrate both the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right. *Slack*, 529 U.S. at 484-85.   In this case, the Court concludes that Petitioner has not made the requisite showing of "the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

## Conclusion

After reviewing the entire record, and for the reasons stated above and by the Magistrate Judge in the Report and Recommendation, the Court overrules Petitioner's objections [ECF No. 50] and adopts and incorporates by reference the Report and Recommendation [ECF No. 41] of the Magistrate Judge.

**IT IS THEREFORE ORDERED** that Respondent's motion for summary judgment [ECF No. 16] is **GRANTED**, and Petitioner's habeas petition [ECF No. 1] is **DISMISSED WITH PREJUDICE.  IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

September 26, 2017                          s/ R. Bryan Harwell
Florence, South Carolina                   R. Bryan Harwell
                                           United States District Judge